# Court of Oyer and Terminer—New York County.

*February*, 1888.

## PEOPLE *v.* SQUIRE AND FLYNN.

CONSPIRACY.—DECLARATIONS OF CO-CONSPIRATORS.—ORDER OF PROOF.

Declarations of alleged co-conspirators, made subsequent to the abandonment or accomplishment of a conspiracy, cannot be given in evidence against a co-conspirator.

Whether declarations of alleged co-conspirators can be given in evidence before proof has been given of the conspiracy, is a question which rests very largely in the discretion of the trial judge.

Trial at Oyer and Terminer of Rollin M. Squire and Maurice B. Flynn, for conspiracy.

The facts fully appear in the opinion rendered on a demurrer to the indictment, *ante*, p. 262.

*John R. Fellows*, district-attorney (*Benjamin F. Dos Passos*, assistant), for the people.

*Noah Davis* and *B. W. Huntington*, for defendant Flynn.

*Howe & Hummel*, for defendant Squire.

Certain objections to the admissibility of evidence having been interposed and elaborately argued, the trial judge delivered the following opinion :

LAWRENCE, J.—When the court adjourned yesterday there were two questions which had been presented for its consideration, and which it took time to deliberate upon.

The first question was whether declarations of alleged

co-conspirators can be proved before proof has been given of the conspiracy.

Second, whether declarations of one of the alleged co-conspirators, made subsequent to the abandonment or accomplishment of the conspiracy, can be given in evidence as against a co-conspirator.

The second question I shall dispose of first.

The general rule upon this subject has been frequently considered by the Court of Appeals in this State and in some quite recent cases.

In the case of New York Guaranty and Indemnity Co. v. Gleason (78 *N. Y.* 514), the rule is thus stated: "The plaintiff had the right to show, under the complaint, that there was a conspiracy, engaged in by the defendants and others, to forge these bonds and to procure this money. It had the right to give any competent evidence to establish the conspiracy; and having established it, it could then prove the acts, admissions and declarations of any one of the conspirators done and made during the pendency of the criminal enterprise, in pursuance and furtherance thereof and in reference thereto. Such evidence is received on the theory that the conspirators have jointly assumed to themselves as a body the attributes of individuality, so far as regards the common design, thus rendering whatever is done or said by any one in furtherance of that design a part of the *res gestæ* and therefore the act of all. It is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners as against the partnership."

In that case, evidence was offered as to the declarations which had been made by one of the alleged conspirators subsequent to the accomplishment or perfection of the conspiracy, and the learned court say: "These were merely the declarations of Pettis as to a past transaction. They had nothing to do with any *res gestæ*, accompanied no act done in furtherance of the criminal enterprise; had nothing to

do with the formation of a conspiracy or with carrying it forward. Therefore, within the principles above laid down, the evidence was incompetent."

In the case of McCarney *v.* People, 83 *N. Y.* 417, in discussing this question, the court say: "It is a rule of stringency that there must be proof of a conspiracy before the declarations of a co-conspirator can be taken against one on trial for that offense. Yet that rule has sometimes been made to yield to the other that the order of proof must yield to the discretion of the court."

In the case of People *v.* Davis (56 *N. Y.* 103) the court say: "The general rule is, that when sufficient proof of a conspiracy has been given to establish the fact *prima facie* in the opinion of the judge, the acts and declarations of each conspirator in the furtherance of the common object are competent evidence against all. But to make the declaration competent it must have been made in furtherance of the prosecution of the common object, or constitute a part of the *res gestæ* of some act done for that purpose. A mere relation of something already done for the accomplishment of the object of the conspirators is not competent evidence against the others. We have already seen that the statement in question was a mere narration of what had been done."

In the case of Stone *v.* People (13 *Hun*, 265), a deposition by one of the alleged co-conspirators was received against his alleged co-conspirators, the deposition having been taken some two or three months after the transaction. The court said: "The deposition of Stone was incompetent as evidence against Black. The evidence was given long after the plaintiffs in error had ceased to act in furtherance of the purposes of the conspiracy. For the same reasons the deposition of Black was not evidence against Stone."

Applying the doctrine laid down in these cases to this question, I feel constrained to say that I shall deem it my duty to exclude any evidence as to the declarations made by either of the defendants after the perfection or accom-

plishment of the alleged conspiracy. Having made that ob-
servation, I shall now address myself to the other question
which was under consideration when the court adjourned
yesterday, to wit: whether the declarations of alleged co-
conspirators can be proved at all before proof has been
given of the conspiracy.

The general rules on that subject are stated in the ele-
mentary works, and also in the different Reports of the dif-
ferent States, and are apparently quite well established.
Greenleaf says: " The same principles apply to the acts and
declarations of one of a company of conspirators, in regard
to the common design as affecting his fellows. Here a
foundation must first be laid by proof sufficient in the
opinion of the judge to establish *prima facie* the fact of
conspiracy between the parties, or proper to be laid before
the jury as tending to establish such fact. The connection
of the individuals in the unlawful enterprise being thus
shown, every act and declaration of each member of the
confederacy, in pursuance of the original concerted plan,
and with reference to the common object, is, in contempla-
tion of law, the act and declaration of them all; and is,
therefore, original evidence against each of them.

In *Roscoe's Criminal Evidence*, the learned author, re-
ferring to the Queen's case, reported in 2 *Brod. & Bing.*
310, says: " The following rules were laid down by the
judges: We are of opinion, that on the prosecution of a
crime to be proved by conspiracy, general evidence of an
existing conspiracy may, in the first instance, be received as
a preliminary step to that more particular evidence, by
which it to be shown that the individual defendants were
guilty participators in such conspiracy. This is often nec-
essary to render the particular evidence intelligible, and to
show the true meaning and character of the acts of the in-
dividual defendants, and on that account, we presume, it is
permitted. But it is to be observed that, in such cases, the
general nature of the whole evidence intended to be ad-
duced, is previously opened to the court, whereby the

judge is enabled to form an opinion as to the probability of affecting the individual defendants by particular proof applicable to them, and connecting them with the general evidence of the alleged conspiracy; and if upon such opening it should appear manifest that no particular proof sufficient to affect the defendants is intended to be adduced, it would become the duty of the judge to stop the case *in limine*, and not to allow the general evidence to be received, which, even if attended with no other bad effect, such as exciting an unreasonable prejudice, would certainly be a useless waste of time."

Mr. Wharton, referring to the authorities cited by Sir J. F. Stephen in a note to *Roscoe's Criminal Evidence*, makes the following statement: "It is a question of some difficulty how far it is competent for the prosecution to show, in the first instance, the existence of a conspiracy amongst other persons than the defendants, without showing, at the same time, the knowledge or concurrence of the defendants, but leaving that part of the case to be subsequently proved. The rule laid down by Mr. East is as follows: 'That the conspiracy or agreement among several to act in concert for a particular end must be established by proof and before any evidence can be given of the acts of any person not in the presence of the prisoner: and this must, generally speaking, be done by evidence of the party's own acts, and cannot be collected from the acts of others, independent of his own, as by expresss evidence of the fact of a previous conspiracy together, or of a concurrent knowledge and approbation of each other's acts.' But it is observed by Mr. Starkie that in some peculiar instances in which it would be difficult to establish the defendant's privity without first proving the existence of a conspiracy, a deviation has been made from the general rule, and evidence of the acts and conduct of others has been admitted to prove the existence of a conspiracy previous to the proof of the defendant's privity."

In the case of Place *v.* Minster (65 *N. Y.* 105 and

106), Mr. Commissioner Dwight, in speaking upon this subject, says : "Nothing can be better settled than the main proposition that the declarations of one alleged conspirator cannot be admitted against his associates unless the conspiracy be established. There is, however, no rule that the conspiracy must be established first in the order of time. Convenience may require that the declaration be admitted provisionally, subject to subsequent proof of the conspiracy. If that is not offered, it should be stricken out. If this discretion is abused, there will be error."

He then goes on to say that there was no abuse of the discretion in that particular case, and he quotes the passage from Greenleaf to which I have already referred, and says that Greenleaf adds very properly : " This is not permitted except under particular and urgent circumstances lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers. In the case at bar, the declarations were the introduction to the contract —the vestibule to the structure, which otherwise could not be entered. If there is any case in which ' convenience ' requires the relaxation of the ordinary practice it is the present. At the same time it is proper to reiterate, with Greenleaf, that the ordinary practice should not be departed from except under particular and urgent circumstances."

I also refer to a decision of the Supreme Court of the United States, United States v. Britton, rendered in October, 1882, and reported in 108 U. S. 204, where Mr. Justice Woods, in delivering the opinion of the court, says : " The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone."

Without referring to any other authorities at length, I will state that the doctrine which I have read from these various authors and reports has been recently enunciated in the case of the Anarchists (Spies v. People, 122 Ill. 1) ;

and a comparatively short time ago in the Star Route cases (United States *v.* Dorsey *et al.*).

The result of these authorities seems to be that the question is one which rests very largely in the discretion of the judge, and, while the general rule is that the fact of the conspiracy should be first established, if there are facts and circumstances in the case which the judge, in the exercise of a wise, sound and proper discretion, deems it his duty to lay before the jury as tending to establish a *prima facie* case of conspiracy, it is his duty to do so. Therefore, after having given to this question the best consideration and study of which I have been capable during the interval of time which has elapsed since the adjournment of the court, I have come to the conclusion that it is my duty to allow evidence to be given of the declarations of Squire as against Squire at or about the the time of this alleged conspiracy, and of Flynn as against Flynn at or about that time; but I shall deem it my duty, as I have already said, to exclude from the consideration of the jury in this case, any statements made either by Squire or by Flynn as evidence against his co-conspirator after the accomplishment or perfection of the alleged conspiracy. I do not deem it necessary to add anything else to what I have already stated.